**BUTTERFIELD** et v **SNIVELY** et

Ohio Appeals, 5th Dist, Stark Co

Decided Oct 23, 1937

Burt, Kinnison, Carson & Shadrach, Canton, for plaintiff-appellees.

E. W. Diehl, Canton, and F. J. Drunkenbrod, Canton, for defendants-appellants.

## OPINION

By LEMERT, J.

This cause was tried in the court below upon a petition which set out the execution of a lease on certain property located in Arizona, and this is admitted in the answer and is not, therefore, an issue. The appellees then allege that they expended the sum of $2,557.72 in developing the leasehold, and they further allege that at the time they were evicted from the premises the lease was of the reasonable value of $15,000, and that they were damaged in the sum of $17,757.72. This was denied by the appellants.

In the appellants' answer, abandonment was pleaded and the record before us shows that abandonment was not proven, so that the question of abandonment is not an issue in this lawsuit.

Numerous grounds of error are complained of and we have carefully examined the record in regard to all of them and from such examination we are led to a consideration to but two of the alleged claimed errors: First, errors in the charge of the court to the jury, and second, that the verdict is not sustained by the weight of the evidence. On all the other grounds mentioned, we find no error herein.

Going directly to the charge of the court below, we find that the court charged the following:

"The law attempts by rule of damages to place the parties, so far as possible, in the condition that they would have been had there been no breach of contract between them. In other words, no wrongdoing. So that your measure of damages in the case, if you find for the plaintiffs, is to give what they might have reasonably expected to gain from the operation of the mine if they had not been disturbed, the rule which is laid down is in other states located in a mining district.

"Now what is such an amount? How are you to determine what amount plaintiffs have lost, if they have been dispossessed? There has been some evidence here as to the amount of work performed and some evidence as to a lump sum that is now said to have included groceries and transportation, especially groceries being a matter one would use, whether one was in the mining business, or other business, towards his support and his living; and then there has been some evidence as to what this lease was reasonably worth, ranging anywhere from fifty thousand dollars to zero.

"You must arrive at a conclusion of course, from the evidence that has been submitted in the case. However, in any case the court wishes to suggest to you that you do not permit your allowance of damages to overlap. That is, you base it as a matter of fact upon a reasonable value of this lease, and you should not take into

**34**

consideration any other damages that might have accrued which went in the first instance to building up that lease. In other words, to make it simpler to the members of the jury, the court will say if you were suing for damages for destruction of property you would hardly expect to recover for the value of the property and the expense you went to in building the property in the first instance. But in any event, in the final analysis, it is for the members of the jury to say just what was the financial loss, if any, which the plaintiff did sustain, in whatever manner you arrive at it, that is the ultimate determination of compensation, the exact loss, if any, which was sustained.

"But, placing it in another language, what reasonable profit might have been expected to result to plaintiffs had they not been disturbed in their possession? As to the other matters in regard to damages, the court will say that the reasonable value applies to the leasehold in itself. You read this lease and you will find that it contains certain sums to be paid as the mine produces that amount and you are not putting on a valuation of the mine as it stands alone, but what would have been the value to the plaintiffs had they been permitted to carry out the terms of this lease.

"Now you will have the lease with you in the jury room. It is in evidence. That is the question. What would be the expected gain had they continued, or what was the loss by reason of the fact that they did not continue to operate under and by virtue of this lease? In other words, the thing lost is their leasehold rights and of course that was as to time, to begin a certain date and terminate at a certain date. If you find, as the court has already suggested by the preponderance of the evidence that plaintiffs in this case have been dispossessed by a superior, adverse title to that of the defendant, then you will find the amount of damages the plaintiffs sustained, your finding to that extent will be for the plaintiffs. If you fail to find that, or if you fail to find there was any damages, then and in that case, your finding must be for the defendants because plaintiffs must prove, by a preponderance of the evidence, two things, their dispossession under the lease, that is unlawful dispossession under the lease, and, second, the amount and extent of the damages arising therefrom."

The above quotation is from pages 175, 176 and 177 of the record. The question

now arises, what is the correct measure of damages? The appellees in this case are seeking to recover for money expended, to-wit: $2,757.72 and for the value of the leasehold, to-wit: $15,000.

From the pleadings in this case we find that this is an action to recover damages for the breach of a contract of lease. In 24 **Ohio Jurisprudence**, 904, §177, in discussing an action for damages such as the instant case, we find the following:

"The general rules of pleading apply to actions for damages sustained by reason of an eviction. And where a petition avers the execution of a contract, such as a lease, the value of the contract to the petitioner, the breach thereof by the defendant, as by the dispossession of the lessee, the damage is in a sum equal to the value of the contract, and the gravamen of the complaint is the breach of the contract."

It is our opinion that because of the allegations in the petition, the court's instruction did not state clearly and concisely the issue of fact and the principles of law governing them for the purpose of assisting a jury in arriving at a verdict responsive to the facts and law applicable in the instant case; that because of the court's failure to give in the charge on the measure of damages, that the jury was not in a position to arrive at a correct conclusion. In other words, the court's charge was misleading, and misdirected the jury in the consideration of the issues in this case, and was prejudicial error.

In this case no special damages were plead, unless it was the allegation that the expenses in the amount of $2,757.72 had been made in developing the lease. The law applicable to the cases of this kind is so well fixed that we deem it only necessary to call attention to the ▌ fact that expenses for developing a lease are not collectible. In other words, the law does not allow damages for developing a lease. **16 Oh St, page 573, syllabus 2.**

In the case at bar there was no evidence that even tended to show the market value of the lease. In one place Mr. **Butterfield** testified that the **property** was worth $40,-000 to $50,000. There is a vast difference between evidence as to the value of a property and giving the market value of the lease, as a market value of a property might be a considerable sum and a market value of the lease thereon might be only a very meager sum. In the case at bar the un-

disputed evidence shows that the plaintiffs paid $25 for the lease, and thereafter all payments were to be reckoned on the smelter return, that is, the plaintiffs were to pay ten percent of the net smelter returns on all ores milled or sold. If the plaintiffs did not have any smelter returns or did not sell anything, there were no payments due.

In 47 Colorado 320, syllabus 4, we find the law that we believe is applicable to the instant case.

"The sole purpose of a lease of mining premises is profit, and in case of wrongful eviction, the lessee will, on adequate proof, be entitled to what he would have gained by the operation of the mine if not disturbed."

The instant case being a mining proposition, we conclude that the correct measure of damages, if loss of profit is the issue, should be approximated as follows: In mining cases in case of wrongful eviction of the lessee holding under a lease, the lessee is entitled when adequate proof is made, to what he would have gained by the operation of the mine. It is self-evident that a gain must be something above operating expenses. Until operating expenses are paid, there can be no gain. The trial court in the instant case, as above stated, said in the charge, "If you find for the plaintiffs, give them what they expect to gain from the operation of the mine." This part of the charge, without any direction as to deductions for operation, we think is incorrect, misleading to the jury and highly prejudicial to the appellants.

The trial court also said, "work performed and expenses paid, etc., are some evidence of the value of the leasehold," and this part of the charge is incorrect and prejudicial to the appellants, as both work and expense indicate loss unless there is evidence to show that the income was larger than the cost of work and expenses, and applies to profits and not to value of leaseholds.

The court, on page 175 of the record said, "to give the appellees what they reasonably expected to gain," was either a reference to profits or else it did not refer to anything, as it certainly had no reference to leasehold reasonable value, and this instruction was erroneous.

On page 176 of the charge, we find the court said: "You must base damages on the value of the leasehold." Here we have the court charging they must base their damages on the value of the leasehold. If the court was correct in its charge on page 175, then it was incorrect on page 176, and if it was correct on page 176, then it was incorrect on page 175. In either event, the jury was misled thereby.

On page 176 the court said: "You must not allow damages to overlap." As there was only one damage, this part of the charge misled the jury and was prejudicial to the appellants. If the correct measure of damages was the value of the leasehold, then there would be only one measure of damages. If the issue in this lawsuit was the loss of profit, then the jury should have been instructed to ignore and not consider any expense, except as connected with operation.

On page 176 the court charged the jury that also for it (the jury) to determine the financial loss and to determine the exact loss. If the issue of this lawsuit was a loss of profits then this part of the charge was prejudicial to the appellants, and if the issue of the lawsuit was value of the leasehold, this part of the charge was prejudicial to the appellants.

There is a vast difference between making parties whole, and giving them what they might reasonably expect to gain, and a vast difference between the value of a leasehold and profits, and a vast difference between profits and exact loss. How could the jury arrive at a correct conclusion from this charge? The jury did not know and could not tell whether they were to find the value of the leasehold, the profit, the exact loss or value to the appellees, had they been permitted to carry out the terms of the lease.

No one can tell whether the verdict in this case of $6,500 is for the value of the leasehold or for expected gain or for financial loss, or to make the appellees whole. In fact, the amount of $6,500 does not seem to fit any one of these claims. When the court charged that the parties should be put in the condition they were before breach, the court did not correctly charge the law applicable to the issue in the case and the incorrect statement of the law was prejudicial to the appellants, as the appellees might have operated at a loss during all the term of the lease and certainly in that event would not be entitled to recover anything.

So, without commenting further, we are of the opinion that error has intervened

in this case; that the court erred in its charge to the jury, and we are further of the opinion, from an examination of the record before us, that the verdict in this case is manifestly against the weight of the evidence.

For these reasons this cause is reversed and remanded to the Common Pleas Court for further proceedings according to law.

MONTGOMERY, PJ, and SHERICK, J, concur.